364 S.W.3d 680 (2012)
A.J.H. by next friend M.J.H., Petitioners/Respondents,
v.
M.A.H.S., Respondent/Respondent,
v.
Hais, Hais, Goldberger & Coyne, P.C., Intervenor/Appellant.
No. ED 96873.
Missouri Court of Appeals, Eastern District, Division Two.
February 21, 2012.
Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2012.
Application for Transfer Denied May 29, 2012.
*681 Alan S. Mandel, Michael J. Sudekum, Michael P. Downey, St. Louis, MO, for appellant.
Lawrence G. Gillespie, Clayton, MO, for respondent.
KENNETH M. ROMINES, J.
This case concerns the court's inherent power to impose sanctions.

Background and Procedural History
M.J.H. (Father) filed a motion to modify child custody in May 2009. Hais, Hais, Goldberg & Coyne, P.C. (Appellant) represented M.A.H.S. (Mother) for the majority of the litigation. Early in the representation, Mother came to Appellant with a binder of emails from Father to his attorney. Appellant reviewed the emails and placed notes on certain of them. Based on the content of the emails, which Appellant believed indicated possible criminal wrong-doing by Father, Appellant counseled Mother to take the binder to law enforcement.
After its initial review, Appellant consulted with an expert regarding its ethical obligations with respect to the emails, as a result of which Appellant informed Mother that it would not "use" the emails in the custody case. After being advised of this decision, and against the advice of counsel, Mother informed Father that she had the emails and attempted to use them as leverage in pretrial negotiations. Based on Mother's continued insistence on using the emails, Appellant withdrew from its representation of Mother.
During the pendency of the custody case, Father filed a motion for sanctions against Mother. A hearing regarding that motion was held on 1 September 2010. Members of Appellant were subpoenaed to appear at that hearing, but due to scheduling conflicts and deficiencies in the subpoenas, the members did not actually attend. Based on evidence adduced at the 1 September 2010 hearing, Father filed a motion for sanctions against Appellant. After two additional hearings, at which Appellant appeared and was represented, the court imposed sanctions in the amount of $25,000 against Appellant.

Standard of Review
A trial court's imposition of sanctions is reviewed for abuse of discretion. *682 Camden v. Matthews, 306 S.W.3d 680, 683 (Mo.App. S.D.2010). "An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. (quoting Rea v. Moore, 74 S.W.3d 795, 799 (Mo.App. S.D.2002)).

Discussion
While Appellant raised three points on appeal, as its second point is dispositive of the case, it will be addressed first.
In its second point, Appellant claims the trial court erred in imposing sanctions because the court failed to make any findings regarding bad faith on the part of Appellant, and further that the court could not have made such a finding because Father failed to present any evidence demonstrating bad faith on the part of Appellant. Father argues that no such finding was required, and even if it was, there was ample evidence of bad faith to support the court's order.
The court imposed sanctions against Appellant based on its "inherent powers."[1] The purpose of allowing courts to impose sanctions based on their inherent authority is two fold: one, to allow the court to vindicate judicial authority without resort to the more drastic sanctions like contempt of court; second, to make a prevailing party whole for expenses caused by his opponent's obstinacy. Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). However, "Missouri courts are cautioned to exercise their inherent powers "sparingly, wisely, temperately, and with judicial self-restraint."" Rea v. Moore, 74 S.W.3d 795, 800 (Mo.App. S.D.2002) (internal citations omitted). A court should rarely invoke its inherent power "because "[i]t is only one short step from the assertion of inherent power to the assumption of absolute power."" McPherson v. U.S. Physicians Mut. Risk Retention Group, 99 S.W.3d 462, 477 (Mo.App. W.D.2003) (internal citations omitted). The court may only sanction a party when that party has acted in bad faith. Id. at 481 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).
We decide that if the trial court does not make an explicit finding as to bad faith, there must at least be evidence in the record which would support such a finding. In this case there is simply nothing in this record indicating that Appellant acted in bad faith. In its judgment, the trial court acknowledged that none of Appellant's actions were illegal.[2] Instead, the court found Appellant's actions to be "shocking" and "wrong." Those actions included: Appellant's knowledge of the content of the email, continued possession rather than deletion of the emails, intent to "use" the emails to "hurt" Father, and failure to discourage Mother from sharing the emails with Appellant. Indeed, in fact Appellant's "use" of the emails amounted to placing post-it notes on particular emails.
Although the trial court may have found these actions "shocking" and "wrong," none of Appellant's actions support the *683 conclusion that they were acting in bad faith. While there is no concrete definition of "bad faith," it embraces something more than bad judgment or negligence. State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. banc 1986). "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." Id.
Nothing in the record demonstrates that Appellant was acting with any of those purposes. To the contrary, Appellant contacted an expert in legal ethics soon after it received the emails and followed the expert's advice as to how to handle the emails. Additionally, there was no showing that Appellant actually "used" the emails in any way in the litigation with Father. At oral argument, counsel for Father admitted that Appellant's "actions" did not in any way increase the amount of time he was required to spend on the case. As such, the "sanction" appears to be nothing more than a fine. In light of such deficiencies, the court's imposition of sanctions appears arbitrary and unreasonable.

Conclusion
The trial court not having a record demonstrating bad faith erred in imposing sanctions against Appellant in any amount. The judgment of the trial court is reversed.
KENNETH M. ROMINES, J. KATHIANNE KNAUP CRANE, P.J. and ROY L. RICHTER, J., concur.
NOTES
[1] A court's "inherent power" to impose sanctions has been criticized in the dissent in Mitalovich v. Toomey, 217 S.W.3d 338 (Mo. App. E.D.2007) because such "power" inevitably produces unprincipled results and the powers of contempt and discovery sanctions should be sufficient. The state of the law is otherwise.
[2] Although it appeared to Appellant that Father may have engaged in illegal activities. As such, according to its ethical duties, Appellant sent Mother to consult with Attorneys Scott Rosenblum and Robert Adler.